We'll hear argument this morning in Case 18-882, Babb v. Wilkie. Mr. Martinez. Mr. Chief Justice, and may it please the Court, Section 633A states that all federal personnel actions shall be made free from any discrimination based on age. Both parties agree that that language tracks the text and meaning of Title VII's identical federal sector provision covering race, sex, and religion. Together, the two provisions bar discrimination not only in the ultimate outcome of a personnel decision, but also in the process of making that decision. That's true regardless of whether the prohibited characteristic at issue is a but-for cause of the final decision. That's the rule that the MSPB and the EEOC have applied in countless cases for many years, but more importantly, it flows directly from the statutory text. The phrase free from any discrimination governs how the decision shall be made, in other words, the process for making that decision. If that process uses age or race as a negative factor, it's not made free from any discrimination. Congress chose those words carefully, rejecting the private sector language later addressed in Gross and Nassar. It did so in the unique federal sector context to create a remedy for violating constitutional equal protection rights. This Court has said that when a plaintiff is subjected to discrimination in the process of being considered for a government benefit, he necessarily suffers a redressable equal protection injury, even if he can't prove he otherwise would have received the benefit. That same injury rule governs 633A in Title VII. That rule is fully consistent with common law principles and this Court's but-for causation analysis in other cases. The government in this case apparently believes it's perfectly lawful for federal agencies to apply younger is better or whiter is better hiring policies to individuals who can't prove that they would have been hired but for those policies. That's anti-textual and it's wrong. Decisions applying such blatantly discriminatory policies are obviously not made free from any discrimination. The government's theory contradicts the plain statutory language. But you say that the but-for causation is not required for liability but then at the relief stage, as I understand your briefs, you say that but-for causation is required for reinstatement or back pay and where is that in the statutory text? So we would say that at the remedial stage, ordinary remedial principles would apply and those principles require that the victim, the plaintiff, be made whole for the violation. Under those ordinary principles that I think are undisputed on both sides, if the evidence shows that the person, the plaintiff, wouldn't have gotten hired anyway, they shouldn't get remedies that are specifically and logically tied to that thing that they wouldn't have been entitled to in the first place. But that doesn't mean that they shouldn't get the kinds of prospective relief that are For example, why would we go all the way up the hill and then come all the way back down at the relief stage and just say, oh, well, you really do need but-for causation because as you rightly say, if you haven't suffered an action because of age, you're not entitled to reinstate. Your Honor, with respect, you wouldn't be coming all the way down the hill because there would be a wide range of other types of remedies that would be available other than reinstatement and back pay. For example, you might be entitled to an injunction telling the government to stop discriminating. Let's take this case because there is at least one of her allegations is that she was passed over and younger people were selected for the coagulation unit. Now, suppose that's true, younger women were selected, but they were better qualified. They had experience and training that she lacked. So what would be the remedy? You would say there is a violation because age was taken into account. What relief, you said it wouldn't be going all the way back down the hill in answer to Justice Kavanaugh. Sure. What would the relief be? Well, so first of all, assuming that the government could show that she wouldn't have gotten a job, we'll just take that as a given, I think implicit in the question. Then she wouldn't be entitled to reinstatement or back pay, but she would be entitled to remedies like EEO training so that this kind of discrimination wouldn't happen to her next time she applies for a promotion or next time she seeks an opportunity. That kind of training is a classic remedial relief that's available in these types of cases. Who would get the training? The training would be the supervisors and perhaps the others within the Bay Pines Medical Center who had contributed to the discriminatory treatment in the first place. I think if a court, we're here at summary judgment, but if the court, if the proof at more generalized policy of discriminating against people because they were older, the court could also issue some perspective relief that would say that those policies are unlawful. In a lot of these cases, what a court does is requires the entity to post a notice saying, here's the finding of discrimination against us so that people can read that notice, understand what went wrong last time, and not do it again in the future. So no particular relief directly benefiting her? No, Your Honor. Or atmospheric relief, institutional relief? But she herself gets nothing tangible. I think those things would be very tangible for her, Your Honor, because she's still an employee there, she's still operating day to day in that environment, and she still wants to take advantage of future opportunities for training. And so if she gets these kinds of corrective remedies, it's going to make it better for her and easier for her next time when she wants to apply for the opportunity to be treated fairly without regard to age. And this is the kind of forward-looking relief that this court has often recognized is appropriate even without but-for causation, for example, in the constitutional cases that we've talked about. So in cases— Would the remedy be any different than might be obtained under the civil service laws? Well, under the civil service laws, Your Honor, the way the civil service laws work is Section 2302 of the CSRA says that the way you bring a discrimination claim is to sue under this statute that we're currently talking about. There are other remedies available, though, right? I guess I'd have to focus specific—I'm not sure specifically what you'd be asking for, but the way I read the civil service laws is that these types of claims need to be brought under this particular statute. Mr. Martinez, we're assuming the worst for your client, that the government's right that she would not have been hired but-for. But as I understand the equal protection claim, it's that the process would be free from discrimination. Right. So that even if she can't prove she would have gotten the job, she still has an opportunity to prove, qua a remedy, that age was considered and considered inappropriately. Correct. So, for example, give me an example of a defense to one of the government's allegations, because there were four allegations, four or five, of different employment scenarios that she didn't qualify for. Right. But give me an example in those four or five of a process that could have—that she might have won on, that she might have prevailed in showing that that process was corrupted because of her age. Sure. So one example is she sought certain training opportunities. And I think if in the course of—if the court concluded after looking at all the evidence that the reason that she was denied those training opportunities was partly because they thought there were other candidates who were good, but partly because they had a conversation around a table and said, you know, Ms. Babb, she's really kind of old. We don't really like her. She keeps filing these EEO claims. She keeps asserting her rights in this way. Let's not give her the training opportunities in part for that reason. It may be that the government hypothetically could come back and prove that there were other more qualified candidates, but that process has been infected by the consideration of those very significant factors of pure age discrimination. I think if we were looking at— Usually when we have—conclude that there's a tainted process, we make the decision maker go back and do it over without the taint, don't we? I think you do that in a lot of circumstances, Your Honor, and in a circumstance in which that was possible, that might well be an available remedy as well. I think we're several years past the, you know, the particular promotion decision and the particular role. I don't know if those roles even currently exist in the same way that they did several years ago, but I think that's yet another example of a kind of equitable remedy that could be awarded if the process was determined to be tainted. Mr. Martinez, you started by saying that this is a process statute, and I guess I want to press you on why you think that is. If I understood your brief, it was about the word made, but, I mean, that's a possible interpretation of this language. But another interpretation is that when you say that a personnel action should be made free from any discrimination, you're talking about the actual action—the discharge, the failure to promote, whatever—and saying that that action, at the moment in time when it occurs, that action has to be free from discrimination, rather than saying that the entire process leading up to it, including all the irrelevant things that happened that played no role in the action, has to be free from discrimination. So why do you read this as a process statute? I think that's a helpful way—maybe I could just walk you through my interpretation of the statute, and we have it reproduced here at page 5 of the blue brief. And so 633AA, I think there's sort of three big chunks to the statute that are relevant here. First is the subject of the sentence, all personnel actions. Then there's the verb, shall be made. And then finally, there's an adverbial phrase, free from any discrimination based on age. And we think the real work here is being done by the combination of the adverbial phrase, free from any discrimination, that modifies the verb shall be made. It's not made on its own, it's the combination of those things. And we think that in context, that adverbial phrase answers the question of how the decision shall be made. It's not saying what's the decision, it's not saying when is the decision have to happen, it's talking about how that decision shall be made. That's process language. I think the second thing is, once you look within the adverbial phrase, within the free from any discrimination based on age phrase, you should ask yourself, okay, well, what does this process have to be free from? The next part of the statute is any discrimination. And the word discrimination has been interpreted under its plain meaning and in this court's decision in Jackson just to mean unequal, differential, or less favorable treatment. And we think that that is, we accept that, I think the Solicitor General has conceded that that's the understanding of discrimination. So I think what the Solicitor General would say is, sure, it's unequal treatment, but a person is only subject to unequal treatment if he or she doesn't get the outcome that he would otherwise have gotten. And if everything ends up the same, then there's been no unequal treatment. Well, I think, I think, Your Honor, that's why the first part, the free from language and the fact that it's an adverbial phrase modifying the verb and that that language is talking, signals that we're talking about process. Once you know that we've got this, we've got this modifier that's a process modifier that's talking about the process, I think that then sheds light on what we mean by discrimination. What about the subject actions? Right. And that's a term that's used in Nassar, a term that's used in Gross, the word action. And the action is usually referred to as an adverse employment action, namely, as Justice Kagan says, the decision in your brief uses the word process over and over. And the civil service laws that Justice Gorsuch referenced do say that the process has to be free of any, you have to be treated fair and equitably throughout the process. But this doesn't say that. It says action. So how do we deal with the word action? Well, I think you need to read it again in the context of the whole sentence. And it doesn't say actions shall be, can't be based on age. It says actions shall be made free from any discrimination based on age. And so that phrase, we agree with the Solicitor General. I think they say this, I think they say this on, in their, in their own brief, they say that the work that's done by the phrase personnel action is simply to explain the range of employment related actions that's covered by the statute generally. It doesn't bear on the but-for-causation question. I don't know, I'm sorry. Sorry, just to answer the question about action, I think the key point here is if you look at, if you look at this page five of our blue brief, what strikes me is that the phrase that the Solicitor General relies on, based on age, that's where they're getting their but-for-causation textual argument. It's all the way down at the bottom of the, the end of that paragraph. And if you look at it, it modifies the word discrimination, which is immediately to the left. What the Solicitor General is asking you to do is take that based on age phrase, walk up 17 lines of text, turn left, and have it modify personnel actions. That's just not how the statute reads. And I think what, what this Court has always done and needs to do is look very carefully at the wording of this statute. This is the same point that Judges Tatel and Sentel made in the D.C. Circuit, that this statute- Judge Henderson disagreed. Judge, you know, Judge Henderson concurred, Your Honor, so she agreed with the remand. She, she expressed some doubts about maybe the, the clarity or the, the force of the particular arguments that Judges Tatel and Sentel made. But the bottom line here is, I think, grammatically, there's no question that based on age modifies discrimination- But what happens if age plays no role whatsoever in the actual decision, but at some prior point in the process, age was considered? I don't know that anything, I don't think your argument depends on whether we look just at the final decision or we look at the whole process. But what would happen in that situation? I think it would, it would depend, so maybe I'd have to understand the hypothetical a little bit more. I think if, if, if someone could look at the entire, at the, at the decision-making process and say that age was not a factor at all, then I think we would not, a, a plaintiff would not prevail. But if age played a significant role at the beginning of the process in some way, then I think it, it would not be made free from discrimination under the plain language of the statute. Well, but if, if the statute prohibits any discrimination, I don't know where you get your qualification that it has to be a significant factor. It doesn't have to affect the final action. So what type of discrimination, any type, let's say in the course of the, you know, person is younger says, you know, okay, boomer, you know, once, once to the, to the applicant. Now you're only concerned about process. You're not concerned about but-for causation. It doesn't have to have played a role in the actual decision. So is that actionable? I think we would say that it does have to play a role in the decision-making process that, that leads to the decision. And I think in that particular case, if, if it really had no role, if it was just sort of, you know, a stray comment in the air, I think that on the facts of that, I think a, a court could conclude. So how do you, how do you tell what's a significant factor in the decision? We're not saying that it has to be a, we're not using the term significant. Some factor. We're saying it, we're saying that ultimately, we're saying what the statute says, which is that the, that it needs to be made free from discrimination, and we think that applies to the process as a whole. Well, you say free from any discrimination, but it doesn't have to result in the final decision. I'm just trying to see how many stray comments do you need, and who has to make them before you decide that, although it says any, we don't really mean any. We mean some discrimination that has a particular effect, even if it's not but for. I'm just wondering if your position is going to become a, a, a, really just a regulation of speech in the workplace. Oh, of course not, Your Honor. Of course not. Well, of course not. Well, then explain how not. Well, if, if the speech in the workplace is, you know, using ethnic slurs or, or, you know, calling people a boomer or saying unflattering things about them in the age when considering them for a position, then yes, of course. So calling somebody a boomer and considering them for a position would be actionable? I think if, if, if, if the decision makers are sitting around the table and they say we've got candidate A who's 35 and we've got candidate B who's 55 and is a boomer and is probably tired and, and, you know, doesn't know, have a lot of computer skills, I think that absolutely would be actionable. Well, what if it just calls him a boomer? I mean, that, I'm just trying to figure out. I think that, I, I, it's, it seems to me like that would be a classic question for the fact finder, but if the fact finder were to conclude that that statement reflected, was one of the factors going into this decision, I think it absolutely would be covered. I think it absolutely would be covered. Is, is when you answer that question, I had thought you would say, and you didn't. And, and so this is why I have a question. There is another statute, Title VII, and what it says is when the discrimination is a motivating factor, but even though other factors also motivated that practice. Right. Now, I thought you were going to pick up the same standard. We, we, we think that our standard is essentially the same standard. All right. So, so we could say in the opinion, what this means to be free is the same thing that when it amended Title VII, that it isn't enough to show, if you just show, you don't have to show plaintiff that it is but for, but you do have to show it was a motivating factor, even though there may have been other motivating factors, quote, quote. Right. And therefore there is no more administrative problem in this than there is anyway under Title VII. Now, that's what I thought you, but you didn't say that. So now I don't, you just agree with me because you think it sounds. Let me explain. The reason we had, we didn't do that is because I think as everyone would agree by its terms, that provision does not directly apply to this statute. No, I know it doesn't. I'm just explaining why I didn't say it, but I think the substance of the point is exactly right. I think that, that, that this would not create administrability problems. You would actually be clarifying the law and creating a way to say another reason. Another reason you may not have said it is because it comes with another flip side, right? It was a motivating factor, but then the defendant gets to show it wasn't the decision would have been made without regard to it. No, but your honor, that would, that happens at the remedial stage, at the relief stage. And that's exactly our point is that at the relief stage, the defendant does get to show. But in those statutes, in that statute, it happens at the liability stage. And I read your briefs. No, your honor. And I read your briefs. You had in the statute. I understand. I read your briefs to reject the motivating factor or not adopt the motivating factor standard. And no, let me be clear because this is, this is an important point. The Pricewaterhouse type standard that justice Briar. I think justice Briar was talking about what Congress did to fix the problem of Pricewaterhouse. So Pricewaterhouse happens. Congress decides that the Pricewaterhouse test is insufficiently protective of victims. So Congress makes very clear in the statute that there is a violation of the  There is liability with motivating factor, but if the employer can show that, that wasn't about for cause that shrinks the number of remedies that are available to you. And that's essentially, we're not saying that we're not trying to like apply different statutory language here, but we're saying that our rule, the statutory language that we have essentially has that same test. You're not asking, sorry to interrupt. You're not asking for motivating factor. You're saying any factor. Right. But I think the way that that correct, we, we, we, we don't think it makes a difference, frankly, your honor. So yes, you're asking for any factor. We think any factor and motivating factor essentially mean the same thing because they play the, the factor plays into the decision. And so in that sense, it's motivating. Counsel, I wanted to give you an opportunity to respond to another argument that concerned me. The solicitor general suggests that if we were to adopt your view, we'd have to do the same thing with respect to private discrimination under what is it? The six 23, right. Um, which of course we can't do because of gross, um, and point specifically the language saying, you know, you can't discriminate, um, in hiring or otherwise right discriminate with respect to terms and conditions of, of, of employment. And if we were to adopt your broad reading here, what of discriminate, why wouldn't we do the same thing there? So I think gross is totally different. And just a couple of points on this, because it's very important. Number one, Congress looked at that exact language when it was legislating the statute that's at issue in this case, Congress rejected applying the private sector language from the ADA to ADA federal sector claims. We know that from the drafting history. We know that from this. I understand that, but that's not responsive. So right. So instead it shows different language, which is fundamentally different from the language in gross. I'm going to get to the discriminate point. I wish you would. Okay. I'll, I'll, I'll go to the discriminate point. If you look at the language in gross and we've reproduced it on, uh, in the addendum to our reply brief, what it has is it talks about four different specific types of adverse actions, uh, failing to hire, refusing to, uh, failing to hire, refusing to hire, discharging any individual. And then the fourth one, otherwise discriminate with respect to terms compensation conditions. The first three of those things are all outcome based. The first three items in the list, the fourth item in the list is an otherwise clause and otherwise sort of catch all clause. Why wouldn't that be processed too is the solicitor general's question. Well, the first three things are the first three in that list are all outcome based. And so what this court has said, when looking at very similar, otherwise catch all clauses, it's applied the Euston generous Canon and said that when you have things in a list like that, the last item with the otherwise, the word discriminate here means something different than the word discriminate there. I think the word discriminate here needs to be read in the context of the broader phrase. The other contextual difference is that our statute, unlike the statute in gross has the most important textual indicator that comes makes this case come out our way, which is the shall be made free from. I understand that. But the otherwise discriminate what you've got the Euston generous Canon, excellent Canon, good Canon. You know, the other, the other kind of general rule is when Congress makes a distinction, um, we should attend to the, in language we should attend to it. We couldn't agree more. And I understand. I know where you're going with that. And that's good. That's a good point. But, or otherwise discriminate is, is very, I mean, that, that seems to be a catch all that seems to be anything. I think I would resist that one because it used him generous. And the second point tech, do you think you would have resisted that before gross? I, you know, your honor, we're not here to relitigate gross. I think this gross was a very closely decided decision. Uh, you know, it was, it was a very closely divided court on gross. We're not here to, we're here to make the point that what gross said was that you need to look at the statutory language with careful attention, careful and critical examination. And this is a, this is a quote from gross. You can't apply rules applicable under one statute to a different statute without really looking carefully. And here the otherwise discriminate clause is limited by with respect to terms, conditions, et cetera. That's not limiting. That's broadening language. That's, that's supposed to be a catch all phrase at the end that will cover anything otherwise discriminate against anything dealing with compensation terms or conditions. The word conditions in particular in the lower courts has been interpreted very broadly to cover all sorts of aspects. Whereas here you just have actions. So if you're comparing the two statutes to pick up on justice Gorsuch's point, I would have thought a broader scope, if anything was in that language, I think the word discrimination sometimes can take on different meanings depending on the context. The most important textual context, the textual clue is the absence of the key phrase shall be made free from discrimination. The most important historical clue is that unlike the statute in gross, this statute arises in a context in which Congress wanted to address the constitutional rule, wanted to plug the gap in remedies and make sure that that victims of unconstitutional discrimination had a viable remedy. Thank you. Counsel general Francisco, Mr. Chief justice. And may it please the court, the federal sector ADA adopts the same causation standard applicable to state and local governments and private companies, but for causation, three basic points. Make this clear. First section six 30, a six 33, a prohibits the federal government from making a personnel action based on age, but you don't make a personnel action based on age. If you make the same decision that you would have made for a similarly situated younger person, since any consideration of age has not affected the decision that you have made at the very least as engrossed in Nassar, nothing in six 33, a clearly overrides the common law default rule of, but for causation second, Congress easily could have overridden the common law default rule. If it wanted to, it could have applied the motivating factor standard to the ADA, or it could have gone further and prohibited any consideration of age, no matter how fleeting, but it didn't do that. Instead, it adopted language that this court has interpreted as incorporating the common law default rule. Finally, our rule makes perfect sense. There's no reason why Congress would have created a lower causation standard for the federal government than for state and local governments. After all, there's no evidence that Congress was more concerned about discrimination by the federal government. That's why Senator Benson section six 33, a principal sponsor said that under six 33, a quote government employees will be subject to the same protections against arbitrary employment based on age as our employees in the private sector. Now we've had some discussion about the civil service reform act, and I actually think it's very instructive here to the interpretive question. I'd like to point out two specific provisions in that I think that are relevant. The first one actually isn't in our brief. So I'm going to take a minute here to describe it because it's a provision of section six 33 a in the text of the statute. And what you'll see in that provision is that it uses language to describe six 33 a that is parallel to the language that you find in the private sector provisions. So I think it underscores that these are just different ways of saying the same thing. And I'm referring to five USC 23 oh two B one B and here's what it says. Quote any employee who has authority to take direct others to take recommend or approve any personnel action shall not with respect to such authority discriminate for or against any employee or applicant for employment on the basis of age as prohibited under six 33 a so it doesn't have any of the language that my friends on the other side rely on textually. This is a statute that Congress has enacted that in its text is describing six 33 a and it uses language that's parallel to the private sector provisions. And I think it's highly relevant to interpreting six 33 a because as Justice Scalia explained as an in his opinion in branch against Smith it is quote of course the most rudimentary rule of statutory construction that courts do not interpret statutes in isolation but in the context of the corpus juris of which they are a part including later enacted statutes. So if an employer has an explicit younger is better policy Mr. Martinez says your position would allow that to stand for an employee he could not get an injunctive relief against that. What's what's your answer. So a couple of responses Your Honor. First that employee would be treated exactly the same as if he or she worked for a state and local government or a private employer. No different than anyone else covered by Title 7. Secondly that actually goes to the other provision of the Civil Service Reform Act that I was going to refer the court to which is cited in our brief and that's 5 U.S.C. 23 0 1 B 2 which says that quote all employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to age. It underscores that 633 A. So just to be clear would that policy be a violation of that civil service provision. If I yeah I think it clearly would be a violation of that civil service provision would there be any impediments to suing under that civil service. Your Honor there is a very comprehensive scheme for bringing these types of complaints in the federal government. I am quite confident that there is an avenue in which you could challenge a or a younger is better policy were a federal governmental agency. So we've got such a policy. So for a statute that intended to reflect the Equal Protection Clause of the Constitution which would have covered this on its own prior to the enactment of the statute you're now saying Congress intended instead to give litigants less constitutional protection less protection not more equal. No your second you intend on the like private sector discrimination or unlike private sector discrimination under Title 7. Congress intended to give federal employees when it used the phrase free from any discrimination it decided to say this kind of discrimination is OK under this provision. So your Honor I think I disagree with that for a couple of reasons. First I think I disagree with the premise. If Congress said it in fact intended to apply equal protection principles it presumably would have applied the same standard to state governments since they're subject to the same equal protection principles that the federal government is. There's no evidence that Congress was more concerned about the federal government than the state governments quite to the contrary. And here everyone agrees the states are subject to the buck four causation standard. Unfortunately you're wrong because the EEOC and the Civil Service Agency have been reading that equal protection principle even before this provision into federal decision making. So I think I'm not sure how I understand your point. Well I think that I don't think they were if they wanted to follow the state and local provision they would have followed it. Right. I think that created a different and totally separate provision. And on top of it they said that language and our interpretation that language of these private and state government should not be used to interpret this language that affects the federal government. Well Your Honor I think the reason why my answer is fully responsive is because of the suggestion by my friend on the other side is that somehow when Congress extended Title VII and the ADEA to governmental entities and remember they did it at the same time they went from private to private and federal and state governments at the same time. And when Congress made that step the argument is that somehow it was meant to embody equal protection principles. Well if that were the case one would have fully expected that they would apply the same equal protection principles to both the federal government and the state governments. But everyone here agrees that with respect to state governments it's the buck four causation standard that applies to all states. Why is there a federalism concern when you're dealing with state and local governments which you don't have when you're dealing with the federal government alone. And why wouldn't the language as Mr. Martinez pointed out is different. You're treating all those extra words as just meaningless surplus. If they wanted to get the same standard as for private sector employment state and local government employment they would have used the same language but they didn't. They said all right and they said what was the words free from any free from any. Yes. So Congress uses those different different more encompassing language all free from any. I would think that the standard that's before us applicable to federal employment is a more plaintiff friendly standard. So Your Honor two responses on the textual issue but I'd also like to address the federal and federalism issue as well on the textual question. The first is I'd simply point back to that provision of the Civil Service Reform Act that I was referring to earlier. Twenty three oh two. Well call me old fashioned general. But it seems to me that the first and clearly the most important place to go in thinking about what 633 means is to go to 633 and not to go to some later enacted statute in a completely different set of provisions. So I think you know Justice Ginsburg's question holds. It would have been perfectly easy for Congress to have written the same kind of statute that it wrote in gross or in Nassar. Indeed they didn't even have to write a statute. They could have just put the US government in with the state and locals in the private sector provision and they did none of that. They enacted a very different kind of statute which puts the the language that your brief primarily relies on which is based on or because of in a completely different place in the statute modifying a completely different now. So why would they have done that if they just meant to write a gross Nassar statute. Yeah I'd like to straight on address the textual argument first and then the why question second. The textual argument first is suppose you had a statute that said all cakes shall be made free from the use of any eggs. In the course of the cake baking process I whisk up a bowl of eggs. I think about dumping it into the batter but then I say oh I'm supposed to be making a cake without eggs so I throw it in the trash. I have made a cake free from the use of any eggs notwithstanding my use of eggs in the cake baking process because the final cake that I have baked is free from the use of well that I mean that gets to the point I asked Mr. Martinez about. But what if there is a little bit of egg that's put in the final batter. That's the problem. So even if we focus right on just on the actual decision making process the moment of the decision making process I mean I don't know about the why and I'm not sure I care about the why here but you have a terrible time fitting your argument into the statutory language. Can you explain how you can do that. Sure if if if age is considered it is a factor in the ultimate in making the decision there's discrimination based on age and the the the action is not done free from discrimination based on age for two reasons Your Honor. First I'm focusing on the word made and made refers to the point at which the action is taken was the personnel action that you ultimately took made without discrimination based on age. And it is if it's exactly the same as you would have made without any consideration of age. But I'm my second point I think is just as important and it refers to a very important canon of construction that statutory text does not override common law rules unless it does so explicitly. And I think what my cake baking hypothetical does is that it shows that at the very least there's nothing in this text that explicitly overrides the common law default rule and why that's the case then why govern keep going you're governed by the common law default rule. The why question is still hanging which is why would Congress use this different language which is significantly different from the other language. Sure. And I think that one answer is and look I've scoured the legislative history and I haven't found anything that specifically addresses it one way or the other. But I think the most obvious reason is that there is a long and pre-existing separate federal process governing federal employment. And the reason they didn't just amend employer to include the federal government is because they wanted to preserve that pre-existing separate federal process that applies to federal employees but doesn't apply to private employees in local government. I can I better read that one which I will. I'm trying to think of where could this come up. Promotion. The promoting person thinks I see her result on this test. It's highly subjective I'm not sure but I certainly don't want people who are over the age of 82 etc. You see. OK. So nobody here is it's flashing around in his mind. And and so he ends up. Yeah. No. The answer is no. OK. That's the possible real world situation but more likely it's also a question of lawyers and burdens of proof. And under the Title 7 you know what they ended up saying is hey lawyer you show discrimination is really around here and you will win unless they come in and show no but for no but for in which case you still win something. All right. Now the language here seems designed to do just that to deal with that real world situation where we don't understand as a lawyer what that real world situation is in his head you know and and just prove that. And I'll tell you what happens. He can come back and say no not a but for and then you limit the remedies. What word does that. There is a statutory word that does that. It's in 33 a it's called appropriate remedies. And so if it really is a but for as shown by the lawyer. Hey they're not going to every in state they're not going to give her the promotion because by the way she comes in very late. OK. So now we've got the language. That's what they're arguing. And you say why would Congress do that. Why would it make the feds have to do this. The same reason they pass that statute. The fed should be the leader in this. It's not enough. The federal government should be the leader. So we have states private not just federalism but who fought more than any group of people for freedom from discrimination. Look at history. It was the federal government and they should be holier than OK. Right. So we have a reason we have an interpretation of the statute. Now that in my mind is what you're up against. And I fully understand that your honor. And I think it actually illustrates what I think is one of the more troubling parts of the argument of my friends on the other side because their argument really boils down to the notion that in 1974 Congress somehow predicted the 1991 civil rights amendments not just the motivating factor standard or potentially something significantly broader any consideration but the limitation on remedies and the burden shifting. And it did all of that 20 years earlier when it used the free from any language with all respect. I find that simply implausible given that it took us Pricewaterhouse Congress's reaction to that and a whole bunch of other decisions in order to come up with the motivating factor test. So I think your honor what you laid out makes perfectly sensible policy. I don't think it makes any sense that overstates what a complicated concept this is. I mean there are two kinds of concepts you can use. There are did this thing actually cause the firing or the lack of promotion or was this thing around when they made that decision. And you know those are the two basic choices and some statutes make one choice and some statutes make another choice. So it's not a whole lot to predict or anticipate. It's just those are your two choices. And you look to the language of the statute to decide which kind of statute we're talking about. Yeah. And I guess I'd add to the mix a third choice which is the motivating factor test. I can sort of see how textually you could get to the any consideration test. I disagree with it but I can understand how you can get there textually. I think there's no way that you can get from this text to the motivating factor test and under the any consideration test. No way no way. And if you're on the personnel action shall be made free from something free from something. Hey from what. From discrimination based on age. So free from means that that bad thing had to play a role and that role could either be in that decision maker's head and or it could be you have to show but for so which is it says what free from. So obviously my answer is but for but the point that I was trying to make was that under the any consideration test which is my friend's test and focuses solely on process. Suppose you've got some low level hiring official that says to his boss I don't think we should hire this person for 10 reasons one of which is I just think this person is too old. The boss then says you knucklehead we never consider age by the way you're fired for making such a rookie error takes over the file reviews it says well he was actually right on the bottom line this person isn't qualified so we don't hire them. Age has clearly played a role in the process for making that decision and under there's one of the practices but not in the actual decision. So if you focus just on the decision this comes back to your egg hypothetical if there's a little bit of egg in the actual decision that's one thing. But if you threw out the egg before you ever got to that point right and that's a different situation. What I would say is if there's a little bit of egg in it then it would be a but for cause but not maybe the sole but for cause. But if there is if you make the exact same cake you would have made that is the cake that you would have made if you hadn't whisked up the eggs and held it in the first place you have made a cake free from the use of eggs even though it's been part of the process it's not found its way into the final. Can I ask about the practicalities of this case and how it's going to apply in the real world because I'm not sure there's really much difference. They agree that you can't that an employee can't get reinstatement or back pay without showing but for cause. So you obviously agree with that as well. Yes they would say you can get injunctive relief however against practices policies things statements conditions even if they weren't a but for cause of a particular action. You too agree with that albeit under the civil service statute civil service statutes. Yeah right. Basically yeah. So there's no disagreement as I understand it between the two parties about how this is really going to work in the real world going forward. The only disagreement is about which statute is cited when injunctive relief is sought. Well I think there are a couple of big differences. One is done administratively one it's being done by hauled into court and I think that's a pretty big difference. Secondly in the hypothetical that you're spinning out you're essentially entitled to an adverse personnel action that was actually caused by the thing that you're complaining about. But you would say under the civil service statutes that fair and equitable provision that we've gone over for the same kinds of employment condition issues you could get injunctive relief which is exactly what Mr. Martinez is seeking here. I'll be it under a different statute and maybe you're right. There's some that's a girls you have to go through. But in terms of employees the real world of employees and the real world of employers I think there's a lot of agreement between the two. I think that's basically right because the things that he's concerned about the types of policies that he's concerned about couldn't happen within the federal government because of a whole host of laws wholly apart from Section 633A. But I think that the critical issue is whether does 633A provide yet an additional avenue where the federal government can be hauled into court for a judicial remedy and an additional point where we disagree. Sorry to interrupt but an additional avenue that would get you nothing more though. Exactly. An additional avenue that would get you nothing more for the plaintiff but that does create a significant headache for the federal. Mr. General the problem is even though there was no anticipating Price Waterhouse in the with the statute as the whole because public sector state and federal government employees are ending up essentially with the same remedy for all the reasons that Justice Breyer said which is even though we can't read motivating factor it's really the same as a part of the decision making and private sector and state government claimants under Title 7 are entitled to injunctive relief et cetera if they prove it was a motivating factor. Not under the ADA your honor. Not under Title 7. Well your honor under Title 7 and I'd like to clarify this because our position on Title 7 is a little bit more nuanced than that. Under the Title 7 federal sector sex discrimination or race discrimination provisions as distinct from the Title 7 federal sector retaliation provision which we sought cert on and this court denied cert on. If you look at the federal sector sex race provision arguably that does incorporate the motivating factor standard because there is a provision in the federal sector Title 7 that specifically cross references portions of the 91 civil rights amendments that apply the motivating factor test. And if that's right your honor this court has never addressed it. We haven't we did not contest that below. But if that's right then everybody that under Title 7 gets treated by the same motivating factor standard under Title 7. So that takes would take care of all of the race and sex hypotheticals that my friend is troubled by. But critically 633A doesn't cross reference any portion of the 1991 civil rights amendments at all. So I think that further confirms that the text of 633A is not meant to adopt the motivating factor standard but is something different. And the different thing is is the common law default rule unless there's something in the statutory text that clearly abrogates the common law default rule. I'm not going to say that they don't have any textual argument. I think they have a decent textual argument. The question is do they have a textual argument that is sufficiently strong to override the common law default rule of but for causation. And the reason why I lean heavily on my cake baking eggs hypothetical is because I think that at the very least shows that this statutory language is easily susceptible to my interpretation. And once I've met that standard it's governed by the common law default rule of but for causation. Now I think that my friend may get up on rebuttal and point to Chevron and so I would like to take one moment to address the Chevron issue in advance. I think Chevron would be completely inapplicable here for three different reasons. The first is before you ever get to Chevron you apply the canons of construction. And here the canon of construction is that you interpret language to be governed by the common law default rule if there is any ambiguity. So if there were ambiguity we win under the default rule not Chevron. Let's say you completely disagree with that. Chevron doesn't apply for two additional reasons. First as this court held in Epic Systems Chevron doesn't apply where two executive branch agencies disagree on the meaning of the statute since it's inconsistent with Chevron's political accountability rationale. And here we have such a disagreement. Secondly as the court held in the Ledbetter decision Chevron doesn't apply where the executive where the agency is simply interpreting this court's decisions since this court is the expert at interpreting its decisions. And if you look at the EEOC adjudications in this area the analysis tends to be quite short. It's usually about a paragraph and all it's doing is interpreting this court's decisions. So I think we win under the text regardless of Chevron. But even if you think that Chevron in theory might apply here there are two additional reasons why it couldn't apply in this particular case. Martinez is making a distinction that between liability and remedy and he said the bottom line you don't get the job if somebody else was better qualified. Nonetheless you do get some kind of remedy so that the workplace will be free from all discrimination any discrimination. So one possibility is injunctive relief. We will not take age into account and there are other possibilities. So but you seem to think everything is driven by the end result that you are not taking into account the person who got the job was better qualified. Your Honor I think you're fairly characterizing my position and I'd say a couple of things on remedy. If you disagree with me on liability I agree with him on remedy. But I also think that his position on remedy is unnecessary for the reasons of my exchange with Justice Kavanaugh. You can you essentially already have a civil service system that provides the type of relief that my friend on the other side would seek since there are a host of civil service regulations that would prohibit the types of policies that he's concerned about even if there wasn't somebody a particular person in court that was challenging it under Section 633A. But our bottom line position here is that Congress added the federal and state sector extension of 633 in the Title 7 at the same time. It meant to apply the same standard to the federal government that applies to state and local governments and applies to private employers. That standard is but for causation. It results in treating all employees under the ADA the same regardless of who you work for. Since everybody agrees if you work for a private company or state and local government the standard is but for causation and respectfully that's the thing the standard that we think should apply to the federal government as well. Unless the court has further questions Your Honor. Thank you counsel. Five minutes Mr. Martinez. Just a few points Your Honor. Let me start with the text. I think it's very notable that when the Solicitor General stood up here he began in one of the first sentence few sentences of his presentation by misquoting the text. He said this statute covers personnel actions based on age. He made exactly the mistake that we pointed out that I pointed out in my initial presentation. That's not what the statute says. It requires careful attention. It says shall be made free from any discrimination based on age. The Solicitor General as to the text says that Congress intended to apply the exact same rules that are applied to private sector employees as under the statute interpreted in gross. Well with respect whatever we know about the text is that Congress did not intend to apply that regime. Congress specifically considered that regime. It was it was going to do what the Solicitor General wanted in the first draft of the statute. Congress then amended that draft and passed a different statute. You just can't you can't just apply a different statute that Congress expressly rejected. Secondly Your Honor with respect to the constitutional rule I think if you look at the legislative history of this provision and if you look at the Brown versus GSA decision that we talk about in our brief it's very clear that Congress when it enacted Title 7 which which uses the same causation language to apply to the federal sector it was focused on the equal protection problem in the federal sector context. They cite Bowling versus Sharpe both the legislative history and this court's decision in Brown. It makes clear both of them make clear that the purpose of this statute was to was to capture the same kind of constitutional equal protection injuries that were at stake in the long line of cases that we've cited in our brief. Now the Solicitor General says there's no reason states should be treated any differently. Well again one thing we know from the text of the statute and from the legislative history is that Congress expressly decided to treat states differently. They treated states by by amending the employer definition. They treated states like private sector actors. They did something totally different by creating a unique federal sector provision to govern the federal government. You can't just pull that language that applies to states and say it must apply to the federal government. And Justice Breyer you're absolutely right. The legislative history shows that Congress thought of the federal government's being especially important in this context. The Solicitor General there's my third point talks about the common law injury rule. We are our rule is fully consistent with the common law rule. If you look at the restatement the common law third restatement section 26 what it says in comment D is that the first thing you need to do when you're addressing the common law rule of causation is figure out what the injury is. What we've argued is that the injury at stake in this case is the same kind of process based equal protection type injury that this court has repeatedly identified in cases from Bakke up through parents involved. Once you get the injury right we are completely consistent with the common law rule. Finally Your Honor younger is better. I think it's striking that the Solicitor General doubled down on his position that a younger is better stat policy does not violate this statute. His deus ex machina here is section 2301 of the CSRA. That's a cruel joke that will be played on on this court if you accept that rationale. Section 2301 is unenforceable unenforceable. I think the Solicitor General said Justice Kavanaugh in response to your question that it would give rise to a remedy of an injunction in court. That is not accurate. If you look at the MSPB website it specifically says that that this provision is not enforceable and that's the rule that courts across the country have applied. The Solicitor General has had months to come up with a solution to this hypothetical and the best the Solicitor General can do is come up with a statutory provision that's unenforceable that puts victims of discrimination in exactly the same position they were in before this statute was enacted where they had remedies that were not enforceable. Congress stepped in here. It passed a broad statute because it wanted to protect these people. Your Honor I leave you with the statutory text which says very clearly that all federal personnel actions shall be made free from any discrimination based on age. A decision that's made by applying a younger is better policy contrary to the Solicitor General is not made free from any discrimination based on age. I assume and I hope that we would not see within any federal agency any sort of policy like younger is better. And so I'm not sure what practical benefit you are going to provide for in the typical individual age discrimination employment case. If you say that the person can't get reinstatement or whatever absent but for causation but they're going to be these other equitable remedies available I don't know what kind of injunction would be available would be of practical benefit in a case like that. If I may answer two quick points Your Honor first of all I think I agree with you we would not like to see agencies doing this sorts of things. If you look at the Brenton case that we cite at pages 41 to 42 of our brief that case involved a written memorandum. The policy said that someone's ability to control traffic declines with age and they were treating applicants for those positions badly for that reason. I think more broadly Your Honor I think the injunctive relief and the prospective remedies that are available are extremely important in the real world which is precisely why in the equal protection context you've recognized the importance of that kind of injunctive relief and we think that relief is just as important here. Thank you counsel. Case is submitted.